IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID GREEN and § | | |
| DENNIS MORRISON, § | | |
| Plaintiffs, § | | |
| v. § | CIVIL ACTION NO. _____ | |
| § | | |
| MAPLE LEAF ASSOCIATES, L.L.C., § | | |
| DEWAYNE COGBURN, and § | | |
| GLENNA COGBURN, § | JURY DEMANDED | |
| Defendants. § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs David Green and Dennis Morrison complain of Maple Leaf Associates, L.L.C., Dewayne Cogburn, individually and in his capacity as an officer and/or director of Defendant Maple Leaf Associates, L.L.C., and Glenna Cogburn, individually and in her capacity as an officer and/or director of Defendant Maple Leaf Associates, L.L.C., and file this suit to redress violations of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, 2000a, seeking declaratory relief, injunctive relief, compensatory and punitive damages, attorney's fees, taxable costs of court, and pre-judgment and post-judgment interest, respectfully showing the Court as follows:

### I. PARTIES, JURISDICTION AND VENUE

1) Plaintiff Green is a natural-born citizen of the United States and a resident of Hunt County, Texas. Plaintiff Green is of African-American descent, having dark hair, dark skin, and other physical attributes similar to those commonly associated with African-American individuals.

2) Plaintiff Morrison is a natural-born citizen of the United States and a resident of Hunt County, Texas. Plaintiff Morrison is of African-American descent, having dark hair, dark skin, and other physical attributes similar to those commonly associated with African-American individuals.

3) Defendant Maple Leaf Associates, L.L.C. ("Maple Leaf"), is a Texas limited liability company that may be served via its registered agent, Edgar J. Garrett, Jr., at 1109 Main Street, Commerce, Hunt County, Texas 75428.

4) Defendant Dewayne Cogburn is a natural person who may be served at his residence located at 6406 Amesbury Lane, Rowlett, Dallas County, Texas 75089.

5) Defendant Glenna Cogburn is a natural person who may be served at her residence located at 6406 Amesbury Lane, Rowlett, Dallas County, Texas 75089.

6) Whenever in this complaint it is alleged that Maple Leaf committed an act or omission, it is meant that Maple Leaf's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Maple Leaf or was done in the routine normal course and scope of employment of Maple Leaf's officers, directors, vice-principals, agents servants, or employees.

7) This Court has subject matter jurisdiction to hear the merits of Plaintiffs Green's and Morrison's claims under 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, 2202.

8) The Court has personal jurisdiction because each Defendant is a resident of the State of Texas.

9) Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391.

10) This Court has supplemental jurisdiction over all pendant state claims pursuant to 28 U.S.C. §1367.

## II. FACTS GIVING RISE TO THIS ACTION

11) Dewayne Green and Dennis Morrison have owned and operated a successful barbershop in

Commerce, Texas, since 2000, employing several additional barbers who are also African-American. The barbershop's clientele is predominantly African-American. Prior to the events described below, they had done business at two different locations, each for approximately four years. They have never received any complaints from neighbors, contacts by law enforcement, or notice of lease violations at either of these locations.

12) In late March of 2009, in order to expand and improve their business, Mr. Green entered into a commercial lease agreement with HRC Realty ("HRC"), agent for the owner of a commercial building on the corner of Maple and Monroe Streets that had been vacant for several years (the "Property"). The Commencement Date of the lease agreement was April 1, 2009. Mr. Green and Mr. Morrison immediately made preparations to relocate their business to the new location, which required construction and plumbing alterations as well as movement of equipment.

13) While Mr. Green and Mr. Morrison were in the process of moving into their new location, Defendant Glenna Cogburn, who along with her husband owns apartment complexes adjacent to the Property, contacted HRC and complained about people hanging around the building, going in and out of the building, and loud music, saying that "we don't want those kinds of people over there." She also claimed that the police had been contacted on numerous occasions and that activity at the barbershop was restricting her ability to lease vacant apartments and generating threats from existing tenants to leave.

14) The owner of HRC, Quay Throgmorton, who also serves as the Mayor of Commerce, Texas, contacted the Commerce Police Chief to verify Mrs. Cogburn's claims of multiple police contacts. The Police Department records showed only one contact with the Property, which was a telephone call from the property manager of one of Defendants' apartment complexes asking the police to verify that Mr. Green and Mr. Morrison were legally entering the Property.

15) Mr. Throgmorton inspected the Property and determined that all the activity was consistent with tenants moving into a new location. However, he notified Mr. Green and Mr. Morrison of the complaints and requested that they take extra care to ensure that the transition to the new building was as quiet and peaceful as possible.

16) Several days later, Mrs. Cogburn called Mr. Throgmorton again, reiterating her complaints and requesting that the lease be terminated and reiterating that she "didn't want those kinds of people over there." She also asked him to verify that there were no criminals or felons entering the barbershop. Mr. Throgmorton explained that the lease could not be terminated on the basis of a handful of unsubstantiated complaints.

17) At this point, Mrs. Cogburn asked if the owner would be willing to sell the building. Mr. Throgmorton invited her to make an offer. Following their conversation, he once again visited the Property and saw a thriving barbershop business with an improved exterior and well-manicured lawn, a stark contrast to the appearance of the previously vacant and neglected property.

18) On Thursday, April 2, 2009, the <u>second</u> day of the lease term, Defendant Dewayne Cogburn called HRC to inquire about purchasing the Property. While on the telephone, he told Mr. Throgmorton that "we don't need that type of people in the area, with their baggy pants, just hanging around." He later went to the HRC office to draft a formal offer to purchase the Property. During this conversation, he told Mr. Throgmorton that he desired to close within thirty (30) days and that he expected the tenants to be evicted prior to closing. Mr. Throgmorton told him that Mr. Green's one year lease would transfer with the Property. Mr. Cogburn responded that the lease was unacceptable and left the HRC office without making a formal offer.

19) About an hour later, Mr. Throgmorton received a telephone call from the owner of the Property, William Trantham, stating that Mr. Cogburn had contacted him directly to negotiate the

purchase of the Property. During their conversation, Mr. Cogburn made an oral offer to purchase the Property and offered an additional $5000.00 if the tenants were evicted prior to closing, complaining of "large black men yelling and hanging around." Mr. Trantham refused, telling Mr. Cogburn that the tenants were not in violation of their lease and that the lease would transfer with the building.

20) Later that afternoon, Mr. Cogburn called Mr. Throgmorton and told him that the owner had agreed on a price for the building and had agreed to have HRC evict the tenants. When Mr. Throgmorton told Mr. Cogburn that he had spoken with Mr. Trantham less than thirty (30) minutes earlier, Mr. Cogburn hung up the telephone.

21) About an hour later, Mr. Cogburn called Mr. Throgmorton and told him that two police cars were at the Property and asked him what he was going to do about it. Mr. Throgmorton contacted the Assistant Police Chief, who said that an anonymous caller had reported a suspicious vehicle. Officers were dispatched, investigated the Property, and found that nothing was wrong.

22) On April 4, 2009, Edgar J. Garrett, Defendants' attorney, dropped a formal, written offer for purchase of the Property in the HRC drop slot on behalf of Maple Leaf Associates, L.L.C. The offer was promptly forwarded to Mr. Trantham, who expressed dissatisfaction with both the price and the terms.

23) On Monday, April 6, 2009, Mr. Garrett met with Mr. Throgmorton to discuss the offer and make the requested changes. One of the changes requested by Mr. Trantham was to strike a portion of the offer claiming that no leases would be in effect at the time of the purchase. Mr. Garrett struck that portion of the offer and initialed the change.

24) On April 9, 2009, Maple Leaf finalized the purchase of the Property.

25) On April 17, 2009, Mr. Garrett sent a Notice to Vacate to Mr. Green and Mr. Morrison, claiming that they were illegally occupying the property because the owner of the property failed to

provide an executed copy of the commercial lease agreement at the time of closing, which neither he nor the Cogburns had ever requested. Upon request, HRC provided Mr. Garrett a copy of the lease agreement.

26) On April 27, 2009, Maple Leaf filed an Eviction Citation against Mr. Green in Hunt County Justice Court, Precinct 2, alleging that Mr. Green violated the lease agreement by: "No proof of insurance; Social gatherings outside the building on not less than 16 occasions; Occupancy during prohibited hours on more than 1 occasion; Permitting animals on the premises; Creating loud or disturbing noises on not less than 17 occasions; Improper parking of vehicles on not less than 5 occasions." Mr. Green was served with the Citation on May 4, 2009.

27) On May 6, 2009, Mr. Garrett sent a Supplemental Notice of Defaults, Notice of Termination of Lease, and Notice to Vacate, alleging 29 specific instances of supposed lease violations, mostly consisting of noise, heavy traffic, parking violations, and other behavior consistent with any high-traffic business.

28) During the past month, Defendants have contacted the police on numerous occasions and confronted patrons upon entry and exit from the barbershop, with the express purpose and result of disrupting the lawful business of Mr. Green and Mr. Morrison and harassing customers.

### III. CAUSES OF ACTION

### COUNT 1: VIOLATION OF 42 U.S.C. § 1981

29) Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

30) Defendants have interfered with Plaintiff's right to make and enforce contracts, specifically their commercial lease agreement, specifically because of Mr. Green's, Mr. Morrison's, and their patrons' race, color, ethnicity, or ancestry.

31) Defendants' actions violated 42 U.S.C. § 1981.

32) Defendants' actions were intentional, malicious, willful, wanton, callous, and showed reckless disregard for Plaintiff's civil rights.

### COUNT 2: VIOLATION OF 42 U.S.C. § 1982

33) Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

34) Defendants have interfered with Plaintiff's right to lease and hold real and personal property, specifically their commercial lease agreement, specifically because of Mr. Green's, Mr. Morrison's, and their patrons' race, color, ethnicity, or ancestry.

35) Defendants' actions violated 42 U.S.C. § 1982.

36) Defendants' actions were intentional, malicious, willful, wanton, callous, and showed reckless disregard for Plaintiff's civil rights.

### COUNT 3: VIOLATION OF 42 U.S.C. § 2000a

37) Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

38) Defendants have attempted to and have in fact denied Plaintiffs the full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations of a place of public accommodation, specifically the Property, specifically because of Mr. Green's, Mr. Morrison's, and their patrons' race, color, ethnicity, or ancestry.

39) Defendants' actions violated 42 U.S.C. § 2000a.

40) Defendants' actions were intentional, malicious, willful, wanton, callous, and showed reckless disregard for Plaintiff's civil rights.

### COUNT 4: TORTIOUS INTERFERENCE WITH A CONTRACT

41) Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

42) Plaintiff David Green has a valid contract for the lease of the Property.

43) Defendants willfully and intentionally interfered with the contract.

44) The interference proximately caused injury to Plaintiffs.

45) Plaintiffs incurred actual damages and loss.

## IV. DAMAGES

46) Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

47) As a result of Defendants' violations of 42 U.S.C. §§ 1981, 1982, and 2000a and Defendants' tortious interference with Plaintiffs' contract, Plaintiff seeks declaratory relief, injunctive relief, compensatory and punitive damages in excess of $500,000.00, attorney's fees, taxable costs of court, and pre-judgment and post-judgment interest.

## V. ATTORNEYS' FEES

48) Defendants' conduct as described above and the resulting damages and loss to Plaintiffs have forced Plaintiffs to hire the law firm of SCOTT, MONEY & RAY, PLLC to collect the amount due and owing, and Plaintiffs have agreed to pay its attorneys reasonable attorneys' fees for their services.

## VI. JURY DEMAND

49) Plaintiffs make a formal demand for a jury trial in this matter.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Green and Morrison request that Defendants be summoned to appear and answer and that, on final trial, judgment be granted against Defendants, jointly and severally, awarding Plaintiffs Green and Morrison the following relief:

a. Declare that Defendants' actions constituted discrimination on the basis of race, color, ethnicity, and/or ancestry in violation of 42 U.S.C. §§ 1981, 1982, and 2000a;

b. Enter a permanent injunction prohibiting Defendants and its directors, officers, agents, and employees from entering the Property, contacting Plaintiffs or Plaintiffs' patrons, or terminating the lease for any reason other than non-payment of rent;

c. Award Plaintiffs compensatory damages against each Defendant in an amount to be determined at trial for Plaintiff's loss and injury, including loss of business revenue due to Defendants' harassment of customers;

d. Award Plaintiffs punitive damages against each Defendant in an amount to be determined at trial that would be sufficient to punish Defendants for their willful, wanton, and reckless conduct and that would effectively deter each of the Defendants from engaging in similar conduct in the future;

e. Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

f. Award Plaintiffs attorneys' fees and costs of suit; and

g. Award Plaintiffs such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By: /s/ Brent A. Money

**Brent A. Money**
Texas Bar No. 24049530
**Daniel W. Ray**
Texas Bar No. 24046685

SCOTT, MONEY & RAY

P. O. Box 1353
2608 Stonewall Street
Greenville, Texas   75403-1353
Tel.   (903) 454-0044
Fax.  (903) 454-1514
www.ScottMoneyRay.com

**ATTORNEY FOR PLAINTIFFS,
DAVID GREEN AND DENNIS MORRISON**